

### Superior Court of the District of Columbia
### CIVIL DIVISION
**500 Indiana Avenue, N.W., Suite 5000**
**Washington, D.C. 20001 Telephone: (202) 879-1133**

Demaris Retes

_____
Plaintiff

vs.                                           Case Number    **2017 CA 008446 B**

Cricket Wireless LLC

_____
Defendant

### SUMMONS

To the above named Defendant:   John Dwyer, President of Cricket Wireless LLC

You are hereby summoned and required to serve an Answer to the attached Complaint, either personally or through an attorney, within twenty (20) days after service of this summons upon you, exclusive of the day of service. If you are being sued as an officer or agency of the United States Government or the District of Columbia Government, you have sixty (60) days after service of this summons to serve your Answer. A copy of the Answer must be mailed to the attorney for the party plaintiff who is suing you. The attorney's name and address appear below. If plaintiff has no attorney, a copy of the Answer must be mailed to the plaintiff at the address stated on this Summons.

You are also required to file the original Answer with the Court in Suite 5000 at 500 Indiana Avenue, N.W., between 8:30 a.m. and 5:00 p.m., Mondays through Fridays or between 9:00 a.m. and 12:00 noon on Saturdays. You may file the original Answer with the Court either before you serve a copy of the Answer on the plaintiff or within five (5) days after you have served the plaintiff. If you fail to file an Answer, judgment by default may be entered against you for the relief demanded in the complaint.

A.J Dhali. Dhali PLLC

_____
Name of Plaintiff's Attorney
1828 L. Street. NW. Suite 600

Address
Washington D.C. 20036

202-556-1285. E:ajdhali@dhalilaw.com

Telephone

*Clerk of the Court*

By _____
Deputy Clerk

Date   **12/22/2017**

如需翻译,请打电话 (202) 879-4828      Veuillez appeler au (202) 879-4828 pour une traduction      Để có một bài dịch, hãy gọi (202) 879-4828
번역을 원하시면, (202) 879-4828 로 전화주십시오      የአማርኛ ትርጉም ለማግኘት (202) 879-4828 ይደውሉ

IMPORTANT: IF YOU FAIL TO FILE AN ANSWER WITHIN THE TIME STATED ABOVE, OR IF, AFTER YOU ANSWER, YOU FAIL TO APPEAR AT ANY TIME THE COURT NOTIFIES YOU TO DO SO, A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY DAMAGES OR OTHER RELIEF DEMANDED IN THE COMPLAINT. IF THIS OCCURS, YOUR WAGES MAY BE ATTACHED OR WITHHELD OR PERSONAL PROPERTY OR REAL ESTATE YOU OWN MAY BE TAKEN AND SOLD TO PAY THE JUDGMENT. IF YOU INTEND TO OPPOSE THIS ACTION, *DO NOT FAIL TO ANSWER WITHIN THE REQUIRED TIME.*

If you wish to talk to a lawyer and feel that you cannot afford to pay a fee to a lawyer, promptly contact one of the offices of the Legal Aid Society (202-628-1161) or the Neighborhood Legal Services (202-279-5100) for help or come to Suite 5000 at 500 Indiana Avenue, N.W., for more information concerning places where you may ask for such help.

See reverse side for Spanish translation



**SUPERIOR COURT OF THE DISTRICT OF COLUMBIA**
**CIVIL DIVISION**
**Civil Actions Branch**
500 Indiana Avenue, N.W., Suite 5000, Washington, D.C. 20001
Telephone: (202) 879-1133 • Website: www.dccourts.gov

DEMARIS RETES
  Vs.                                                    C.A. No.      2017 CA 008446 B
CRICKET WIRELESS LLC

## INITIAL ORDER AND ADDENDUM

Pursuant to D.C. Code § 11-906 and District of Columbia Superior Court Rule of Civil Procedure ("Super. Ct. Civ. R.") 40-I, it is hereby **ORDERED** as follows:

(1) Effective this date, this case has assigned to the individual calendar designated below. All future filings in this case shall bear the calendar number and the judge's name beneath the case number in the caption. On filing any motion or paper related thereto, one copy (for the judge) must be delivered to the Clerk along with the original.

(2) Within 60 days of the filing of the complaint, plaintiff must file proof of serving on each defendant: copies of the summons, the complaint, and this Initial Order and Addendum. As to any defendant for whom such proof of service has not been filed, the Complaint will be dismissed without prejudice for want of prosecution unless the time for serving the defendant has been extended as provided in Super. Ct. Civ. R. 4(m).

(3) Within 21 days of service as described above, except as otherwise noted in Super. Ct. Civ. R. 12, each defendant must respond to the complaint by filing an answer or other responsive pleading. As to the defendant who has failed to respond, a default and judgment will be entered unless the time to respond has been extended as provided in Super. Ct. Civ. R. 55(a).

(4) At the time and place noted below, all counsel and unrepresented parties shall appear before the assigned judge at an initial scheduling and settlement conference to discuss the possibilities of settlement and to establish a schedule for the completion of all proceedings, including, normally, either mediation, case evaluation, or arbitration. Counsel shall discuss with their clients **prior** to the conference whether the clients are agreeable to binding or non-binding arbitration. **This order is the only notice that parties and counsel will receive concerning this Conference.**

(5) Upon advice that the date noted below is inconvenient for any party or counsel, the Quality Review Branch (202) 879-1750 may continue the Conference **once**, with the consent of all parties, to either of the two succeeding Fridays. Request must be made not less than seven business days before the scheduling conference date.
No other continuance of the conference will be granted except upon motion for good cause shown.

(6) Parties are responsible for obtaining and complying with all requirements of the General Order for Civil cases, each judge's Supplement to the General Order and the General Mediation Order. Copies of these orders are available in the Courtroom and on the Court's website http://www.dccourts.gov/.

                                                    Chief Judge Robert E. Morin

Case Assigned to: Judge TODD E EDELMAN
Date:  December 22, 2017
Initial Conference: 9:30 am, Friday, March 09, 2018
Location:  Courtroom 212
                500 Indiana Avenue N.W.
                WASHINGTON, DC  20001

                                                                                    CAIO-60

## ADDENDUM TO INITIAL ORDER AFFECTING
## ALL MEDICAL MALPRACTICE CASES

In accordance with the Medical Malpractice Proceedings Act of 2006, D.C. Code § 16-2801, et seq. (2007 Winter Supp.), "[a]fter an action is filed in the court against a healthcare provider alleging medical malpractice, the court shall require the parties to enter into mediation, without discovery or, if all parties agree[,] with only limited discovery that will not interfere with the completion of mediation within 30 days of the Initial Scheduling and Settlement Conference ("ISSC"), prior to any further litigation in an effort to reach a settlement agreement. The early mediation schedule shall be included in the Scheduling Order following the ISSC. Unless all parties agree, the stay of discovery shall not be more than 30 days after the ISSC." D.C. Code § 16-2821.

To ensure compliance with this legislation, on or before the date of the ISSC, the Court will notify all attorneys and *pro se* parties of the date and time of the early mediation session and the name of the assigned mediator. Information about the early mediation date also is available over the internet at https://www.dccourts.gov/pa/. To facilitate this process, all counsel and *pro se* parties in every medical malpractice case are required to confer, jointly complete and sign an EARLY MEDIATION FORM, which must be filed no later than ten (10) calendar days prior to the ISSC. D.C. Code § 16-2825 Two separate Early Mediation Forms are available. Both forms may be obtained at www.dccourts.gov/medmalmediation. One form is to be used for early mediation with a mediator from the multi-door medical malpractice mediator roster; the second form is to be used for early mediation with a private mediator. Both forms also are available in the Multi-Door Dispute Resolution Office, Suite 2900, 410 E Street, N.W. Plaintiff's counsel is responsible for eFiling the form and is required to e-mail a courtesy copy to earlymedmal@dcsc.gov. *Pro se* Plaintiffs who elect not to eFile may file by hand in the Multi-Door Dispute Resolution Office.

A roster of medical malpractice mediators available through the Court's Multi-Door Dispute Resolution Division, with biographical information about each mediator, can be found at www.dccourts.gov/medmalmediation/mediatorprofiles. All individuals on the roster are judges or lawyers with at least 10 years of significant experience in medical malpractice litigation. D.C. Code § 16-2823(a). If the parties cannot agree on a mediator, the Court will appoint one. D.C. Code § 16-2823(b).

The following persons are required by statute to attend personally the Early Mediation Conference: (1) all parties; (2) for parties that are not individuals, a representative with settlement authority; (3) in cases involving an insurance company, a representative of the company with settlement authority; and (4) attorneys representing each party with primary responsibility for the case. D.C. Code § 16-2824.

No later than ten (10) days after the early mediation session has terminated, Plaintiff must eFile with the Court a report prepared by the mediator, including a private mediator, regarding: (1) attendance; (2) whether a settlement was reached; or, (3) if a settlement was not reached, any agreements to narrow the scope of the dispute, limit discovery, facilitate future settlement, hold another mediation session, or otherwise reduce the cost and time of trial preparation. D.C. Code§ 16-2826. Any Plaintiff who is *pro se* may elect to file the report by hand with the Civil Actions Branch. The forms to be used for early mediation reports are available at www.dccourts.gov/medmalmediation.

Chief   Judge   Robert   E.   Morin

Filed
D.C. Superior Court
12/08/2017 20:06PM
Clerk of the Court

IN THE SUPERIOR COURT FOR
THE DISTRICT OF COLUMBIA
CIVIL DIVISION

**Demaris Retes**                            )
**3924 Fairview Drive**                      )
**Fairfax, VA 22033**                        )
    **Plaintiff,**       )   Case No:_____2017 CA 008446 B
                          )
    **vs.**               )   <u>Jury Demand</u>
**Cricket Wireless LLC**                     )   Sexual Discrimination, Harassment &
**Morosgo Drive. NE**                        )   Retaliation under the D.C. Human Rights Act.
**Atlanta, GA. 30324**
**Defendant.**

---

## Introduction

    The Plaintiff Demaris Retes while working for Cricket Wireless in Washington D.C from

November 2015 to February 5, 2016, at the 3942 Minnesota Avenue store, Washington D.C.,

was told by her manager Chad Wick Bernard that if she wanted to earn overtime and extra hours,

she had to unzip his pants, and give his penis a hand-job.

    As a single mother needing income, she obliged. Bernard then provided additional hours

to Retes. Bernard also told Retes to unzip her blouse, so that she could show the customers her

cleavage, and that this was good for business. Retes again obliged for fear of being terminated.

Bernard also asked Retes if he could be her sugar daddy. She repeatedly refused his requests to

have sex with her, in exchange for being her sugar daddy. She was then terminated by Bernard.

    Consequently, an action now follows for sex discrimination, quid pro quo harassment and

retaliation under the D.C Human Rights Act (DCHRA) against the Defendant for three million

dollars ($3,000,000.00) and all others costs permitted under the DCHRA and this Court.

## Part I. Parties

1. Demaris Retes is a female who was employed at the Cricket Wireless store from November 12, 2015 to February 5, 2016. Retes is an employee under D.C. Code § 2-1401.02 (9) of the DCHRA.

2. The Defendant Cricket Wireless is a subsidiary of AT&T and is a telecommunications company in the United States.  It also employed the plaintiff. Cricket Wireless is an employer under D.C. Code § 2-1401.02(10) of the DCHRA.

## Part II. Jurisdiction & Venue

3. This Court has subject matter jurisdiction over her DCHRA claims under D.C. Code Ann. § 11-921.

4. Venue is also proper in Washington D.C because Retes was employed in Washington D.C, and was also terminated in Washington D.C. The sexual assault and harassment also occurred in Washington D.C.

## Part III. Exhaustion of Administrative Remedies

5. On October 25, 2016, Retes filed her claim under the DCHRA with the U.S Equal Employment Opportunity Commission (EEOC) alleging sex discrimination and harassment. The claim was then sent to the D.C. Office of Human Rights (OHR) for further investigation.

6. A timely filing of her claim tolls the statute of limitations under D.C Code § 2-1403.16.

7. On November 30, 2017, the OHR administratively discharged the claim.

**8.** On Thursday December 7, 2017, the Plaintiff filed her timely claim in this Court for violations of the DCHRA.

## Part IV. Statement of Facts

9. Retes was employed by "Cricket Wireless LLC, Wireless and Beyond" (a subsidiary of AT&T Inc.) from approximately November 12, 2015 to about February 5, 2016.

10. Retes was employed as a sales representative selling cricket phones. She was earning an hourly wage of $10.50/hr.

11. Retes reported to her Manager Chad Wick Bernard, an African American male.

12. Retes was made aware of the employment with Cricket through a friend of hers, Ilian Watson who knew Bernard as a causal acquaintance.

13. Watson asked Bernard if there were any employment opportunities for Retes. Bernard asked Ilian if he could see a picture of Retes' face. Watson showed him a picture of Retes face, through "facetime."

14. Bernard immediately or on the same day told Ilian that she was hired.  She would be working at the 3942 Minnesota Avenue store. NE, Washington D.C. 20019.  Bernard was a manager at this store.

15. While employed, Retes wore a Cricket uniform or shirt, used a Cricket name badge, and used Cricket computers to sign up new wireless customers. She also helped existing wireless customers.  All of this equipment is provided by Cricket Wireless.

16. At the beginning of her employment, she was working 20 hours per week.

17. During the orientation period, Retes told Bernard that she had a prostitution charge and asked if it was going to be a problem with applying for the position at his store.

Bernard told her that, "Don't worry about it. I am going to tell HR there are no criminal charges."

18. Almost immediately, Bernard then started asking Retes that "I want to be your sugar daddy and that I will take care of you."

19. Bernard then also started buying Retes *Chipotle* burritos 3-4 times during the orientation period. He also gave her rides back home.

20. Retes did not object to the burritos or the ride home, including sometimes, diapers purchased for her infant son. Retes agreed to it, as she thought that Bernard was doing it from the goodness of his heart.

21. After the orientation period, and almost every day until her termination in February 2016, Bernard would again tell Retes that he "wanted to be her sugar daddy," that he "had all this money" and that he "wanted to take care" of Retes.

22. Retes informed Bernard that, she did not want a sugar daddy and that she simply wanted a job, earn a decent and lawful living. She also interpreted his continued requests to be her sugar daddy, as requests to have sex with her in exchange. Retes was deeply offended by his continued request to be her sugar daddy.

23. Sometime after her start, or in late November 2015, Retes asked Bernard for more hours so she could provide for herself and earn extra wages. Bernard told her that he was unable to, as he has other employees working for him. Bernard did however agree to place Retes as a backup or substitute employee if an employee called in sick or was not well.

24. As part of her duties, and uniform, Retes had a zip-up shirt. (Her official uniform was months away) Bernard told her to unzip her shirt, to show her cleavage to the customers, so that she could earn more in tips and income for the store.

25. Bernard would also tell Retes that by so doing, she could get more customers, "tricks" or "Johns" from the store. Retes told him that she was not interested in doing that. He again asked to be her sugar daddy, she again declined.

26. When Retes did unzip her shirt to show her cleavage, Bernard would also give her a look of approval, by biting his side lip. He again continued to say that he wanted to be her sugar daddy.

27. Bernard also told her that he had sex with all the Cricket wireless girls and employees[1].

28. Other times Bernard would grab his crotch and whisper to Retes to "come on let's get into my office." He would do this outside the range of the camera installed at work.

29. Sometime in January 2016, Retes again asked for more hours.

30. Bernard informed Retes that if she wanted more hours, she needed to give him "hand jobs."

31. Upon information and belief, Bernard never made this request for hand-jobs from male employees. Bernard also never told male employees that he wanted to be their sugar daddy.

32. Retes interpreted Bernard's request and advance for hand-jobs as "un-welcomed[2]." She was deeply troubled by her supervisor's offensive and sexual requests.

---

[1] Defendant is being placed on <u>notice</u> that the Plaintiff reserves the right to amend her complaint to bring a <u>class action</u> on behalf of all female employees employed at the Minnesota Avenue store, for sexual assault and quid pro quo harassment by the Defendant.

33. Retes however agreed to it as she needed the money to buy supplies for her infant son.
    Bernard was also the store manager and Retes felt obliged to give in because of his
    position and power in the store and over other girls at the workplace.

34. Bernard after all had bragged to Retes that he had sex with all the girls at the
    workplace.

35. Retes felt that she would lose her job if she did not agree to Bernard's sexual
    commands, desires and wants.

36. Retes gave Bernard hand jobs 3-4 times, by unzipping his pants and grabbing his
    penis in her hand.

37. Soon after, Bernard increased her weekly hours in exchange for Retes sexual favors
    and hand-jobs.

38. Retes gave Bernard hand jobs in January 2016 and February 2016.

39. During these periods, Bernard also continuously kept asking her, if he could be her
    sugar daddy. Retes repeatedly kept refusing his demands for sex with her.

40. On her last day of employment on February 5, 2016, Retes along with three
    employees were sweeping a section of the store.

41. The other two colleagues swept their section; Retes did hers. Then one of the
    colleagues, or the Assistant Manager told her to "sweep that shit up too" or to sweep
    her pile. Retes told the assistant manager, "do not speak to me in that way, and I am
    not going to sweep your pile up."

42. Retes then spoke with Bernard. He told Retes to "sweep everything up and that [she]
    could not touch a register until [she] swept everything up."

---

[2] There is no such thing as "welcomed harassment." It is a fiction of the law, and an outdated concept. All harassment by definition is unwelcomed.

43. It was 2 pm and Retes had not yet had her lunch break. She was also feeling hungry. She clocked out and started eating. Bernard comes to her and says, "What the fuck are you doing Milan?"

44. Retes replied, "You said I can't touch the cash register or do anything else, so I am having lunch." Bernard says, "Go home, you are fired!"

45. Cricket Wireless has a progressive discipline policy and by terminating the Plaintiff, they failed to follow their policy.

46. Retes alleges that Bernard and the Defendant fired her because she refused to let Bernard have sex with her and to allow Bernard to be her sugar daddy.

### Part V. Causes of Action.
### Count I: Sex Discrimination Under the DCHRA

47. Plaintiff reincorporates by reference all the allegations above.

48. At all present times Defendant Cricket Wireless was an employer subject to the provisions of the D.C. Human Rights Act § 2-1401 *et seq* (DCHRA), of the District of Columbia Code.

49. At all pertinent times, Plaintiff Demaris Retes was entitled to protections under the D.C. Human Rights Act.

50. The DCHRA prohibits discrimination in employment "for any reason other than individual merit" including without limitation on the basis of sex

51. Defendant and/or its agents or its employees acting on its behalf discriminated against the Plaintiff on the basis of her sex by treating her differently from male colleagues and less preferably then similarly situated employees outside of Plaintiff's protected class, in violation of the DCHRA.

52. Defendant knew or should have known of the types of discrimination that Plaintiff suffered. Defendant's conduct has been intentional, deliberate, willful and in callous disregard of Plaintiff's rights.

53. Defendant's acts of discrimination caused Plaintiff to suffer economic losses, mental and emotional distress, physical injury, embarrassment, humiliation and indignity.

54. This intentional, reckless and/or willful discrimination on the part of Defendant constitutes a violation of Plaintiff's rights under the DCHRA.

55. By reasons of Defendant's discrimination, Plaintiff is entitled to all legal and equitable remedies under the DCHRA including its attorney's fees.

## Count II. Quid Pro Quo Sexual Harassment Under the DCHRA

56. Plaintiff reincorporates by reference all the allegations above.

57. The elements of a prima facie case of quid pro quo sexual harassment are as follows: (i) The employee belongs to a protected group; (ii) The employee was subject to unwelcome sexual harassment; (iii) The harassment complained of was based upon sex; (iv) The employee's reaction to the harassment affected tangible aspects of the employee's compensation, terms, conditions, or privileges of employment. The acceptance or rejection of the harassment must be an express or implied condition to the receipt of a job benefit or cause of a tangible job detriment to create liability. Further, as in typical disparate treatment cases, the employee must prove that she was deprived of a job benefit which she was otherwise qualified to receive because of the employer's use of a prohibited criterion in making the employment decision; and (v) The employer . . . knew or should have known of the harassment and took no effective remedial action. *See Brown v. Perry,* 184 F.3d 388, 393 (4th Cir. 1999). The

fifth element is satisfied automatically when the sexual harassment was perpetrated by a supervisor. *Id.*

58. In the present instance, the Plaintiff Retes is a female employee belonging to a protected class. She was subject to unwelcomed sexual requests for hand-jobs and have her manager have sex with her, as her sugar daddy. Her supervisor Bernard made this request to the Plaintiff because she was a female. The plaintiff rejected her supervisor's advancements to have sex with her and to be her sugar daddy. The Defendant then terminated the Plaintiff on February 2016, affecting a term and condition of her employment.

59. Defendant knew or should have known of the types of quid pro quo harassment that Plaintiff suffered. Defendant's conduct has been intentional, deliberate, willful and in callous disregard of Plaintiff's rights.

60. Defendant's acts of quid pro quo harassment caused Plaintiff to suffer economic losses, mental and emotional distress, physical injury, embarrassment, humiliation and indignity. This intentional, reckless and/or willful harassment on the part of Defendant constitutes a violation of Plaintiff's rights under the DCHRA.

61. By reasons of Defendant's discrimination, Plaintiff is entitled to all legal and equitable remedies under the DCHRA including her attorney's fees.

## Count III. Retaliation Under the DCHRA

62. Plaintiff reincorporates by reference all the allegations above.

63. Under the DCHRA it is illegal to discriminate against an employee who engages in protected activity.

64. Plaintiff engaged in protected activity when she refused her managers demands to be her sugar daddy. Her repeated complaints to her manager on this in 2016, resulted in her eventual termination in February 2016.

65. Defendant's acts of retaliation caused the Plaintiff to suffer economic losses, mental and emotional distress, physical injury, embarrassment, humiliation and indignity.

66. This intentional, reckless and/or willful retaliation on the part of Defendant constitutes a violation of Plaintiff's rights under the DCHRA.

67. By reasons of Defendant's retaliation, Plaintiff is entitled to all legal and equitable remedies under the DCHRA including its attorney's fees.

## Part VI. Prayer for Relief

WHEREFORE, the Plaintiff prays that this Honorable Court:

A. Declare that the Defendant's committed one or more of the following acts:

(i). Knowingly violated the D.C. Human Rights Act with respect to Plaintiff Demaris Retes;
(ii). Discriminated against her on the basis of her sex in violation of the D.C Human Rights Act;
(iii). Harassed her because of her sex by engaging in continuous request for sexual favors only to then terminate her in February 2016.
(iv) Retaliated against the Plaintiff, only to result in her termination in February 2016.

B. That the Court award Plaintiff damages in the amount equal to all of her accumulated lost wages and benefits, including back pay, front pay and benefits, punitive damages, and compensatory and emotional damages for the financial, physical and emotional harm caused by Defendant, including pre-judgment and post judgment interest and any other damages permitted under the D.C Human Rights Act (DCHRA) in an amount no less than three million dollars ($3,000,000.00);

D9&LI PLLC

C. That the Court also award Plaintiff payment of all fees, costs and expenses inclusive of attorney's fees and expert fees and any and all other remedies that the Plaintiff maybe entitled to by all the laws and this Court.

**Part VII.** **Jury Demand**

Plaintiff requests a trial by jury on all counts.

Respectfully Submitted,

/s/A.J Dhali, Esq.
DC Bar No. 495909
Dhali PLLC
1828 L. Street. NW. Suite 600.
Washington D.C. 20036
Telephone: (202) 556-1285
Fascimile: (202) 351-0518
ajdhali@dhalilaw.com
Thursday December 7, 2017

***Attorney for Plaintiff Demaris Retes***